Jesse Hindman, Cal. Bar No. 222935
**EDLESON & HINDMAN**
225 Broadway, Suite 2220
San Diego, CA 92101
Telephone: (619) 255-4078
Email: jesse@erhlawfirm.com

Jeffrey I.D. Lewis, NY Bar No. 2100808
*pro hac vice* application forthcoming
**FOLEY HOAG LLP**
1301 Avenue of the Americas, 25th Floor
New York, NY 10019
Phone: 212.812.0400
Fax: 212.812.0399
Email: jidlewis@foleyhoag.com

Nathanial J. McPherson, Mass Bar No. 697666
*pro hac vice* application forthcoming
**FOLEY HOAG LLP**
Seaport West, 155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000
Email: nmcpherson@foleyhoag.com

*Of Counsel*

Dana M. Gordon,
Mass Bar No. 652757
*pro hac vice* application forthcoming
**FOLEY HOAG LLP**
Seaport West, 155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000
Email: dgordon@foleyhoag.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AMAZENTIS SA and TIMELINE LONGEVITY, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NEUROGAN, INC., <br><br> Defendant. | Case No. **'25CV2515 CAB DDL** <br><br> **PLAINTIFFS' ORIGINAL COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, Amazentis SA and Timeline Longevity, Inc. ("Amazentis" or "Plaintiffs"), file this complaint for patent infringement against Neurogan, Inc. ("Neurogan"), and allege as follows:

## NATURE OF THE ACTION

1.    Amazentis' claims arise under the patent laws of the United States, 35 U.S.C. §1 *et seq.*, including but not limited to 35 U.S.C. §§271 and 281-85.

2.    Amazentis brings this action to: (i) compel Neurogan to cease its infringement of Amazentis' United States patent rights based on Neurogan's unauthorized commercial use, offer for sale, sale, and/or importation of urolithin A products in violation of Amazentis' patent rights as enumerated below; and (ii) compel Neurogan to compensate Amazentis for the harm caused by Neurogan's unlawful actions.

## PARTIES

3.    Amazentis SA is a corporation organized under the laws of Switzerland with its principal place of business at EPFL Innovation Park Batiment C, Ecublens, 1024, Switzerland, and appears in this district for the limited purpose of bringing this litigation.

4.    Timeline Longevity, Inc., is a corporation organized under the laws of the State of Delaware with its principal place of business at 824 U.S. Highway 1, Suite 320, North Palm Beach, Florida 33408, and is a wholly owned and operated subsidiary of Amazentis SA.

5.    Upon information and belief, Neurogan is a corporation organized under the laws of the State of California and having a principal place of business located at 8821 Production Ave, San Diego, CA 92121.

6.    Upon information and belief, Neurogan makes or has made, uses or has used, offers for sale or has offered for sale, sells or has sold, and/or advertises or has advertised products containing urolithin A, including dietary supplement products

and skin care products, to customers nationwide, including residents in California and residents of this district.

## JURISDICTION AND VENUE

7. This action arises under (i) the patent laws of the United States, 35 U.S.C. §100 *et seq.*, including but not limited to 35 U.S.C. §§271 and 281-85.

8. This Court has subject matter jurisdiction over Neurogan pursuant to 28 U.S.C. §§1331 and 1338.

9. This Court has personal jurisdiction over Neurogan because, on information and belief, Neurogan is a corporation organized under the laws of the State of California with its principal place of business located in this district at 8821 Production Ave, San Diego, CA.

10. This Court also has personal jurisdiction over Neurogan because, on information and belief, Neurogan has systematic and continuous contacts with this judicial district, and, on information and belief, has committed the unlawful acts giving rise to this action within this judicial district, including by placing its urolithin A-containing products into the stream of commerce in this district.

11. Venue is proper in this District under 28 U.S.C. §§1391 and 1400(b), at least because Neurogan resides in this district by virtue of its organization under the laws of the State of California, has its principal place of business in this district, has committed acts of infringement and has a regular and established place of business in this district, and resides in this district.

## BACKGROUND

### Amazentis and Urolithin A

12. Founded in 2007 by researchers at the Swiss Federal Institute of Technology, Amazentis is an innovative Swiss life sciences company that employs rigorous science to pioneer the discovery and clinical development of innovative nutritional and cosmetic products. Amazentis is a leader in urolithin research and

development; its scientists have published numerous papers on urolithin A, and it has conducted multiple clinical trials studying the uses and benefits of urolithin A.

13.    As background, the cells of humans and other animals undergo a process called autophagy in which cells eliminate and then regenerate their own internal components that have become defective or damaged. For example, cells will recycle dysfunctional mitochondria—the internal cellular component that aerobically generates energy for the cell—through an autophagy process called mitophagy. Research performed by Amazentis and others shows that urolithin A, a compound that can be produced by certain microflora in the mammalian intestine following the consumption of dietary precursors, *e.g.*, compounds called ellagitannins, plays an important role in stimulating this process.

14.    However, research has also shown that the effectiveness with which mammalian intestinal microflora metabolize certain foods (*e.g.*, pomegranates, raspberries, strawberries, black raspberries, walnuts, and almonds) to produce urolithin A varies significantly from person to person, with most people producing limited urolithin A or none at all. In addition, research has further shown that autophagy and mitophagy become less efficient with age, leading to declines in health associated with aging, including declines in muscle mass, energy levels, immune function, cardiovascular function, cognitive health, and other physiological deficits.

15.    Through its own extensive research and development, Amazentis has developed processes to chemically synthesize urolithin A (*i.e.*, outside of the microflora of the mammalian intestines) in sufficient quantities to be used as a dietary supplement. Further, through rigorous animal and human clinical studies, the results of which have been published in peer-reviewed and other publications, Amazentis has demonstrated the benefits of direct supplementation with urolithin A.

16.    Amazentis has demonstrated through clinical trials that direct supplementation with effective amounts of urolithin A in excess of the amount

produced by mammalian intestinal microflora stimulates an intracellular process called mitophagy.  Mitophagy is the selective removal and renewal of damaged mitochondria through a cell's pathway for autophagy.

17.    Amazentis has also demonstrated through clinical studies that the mitophagy induced by urolithin A supplementation confers numerous benefits that support healthy aging, including increased muscle function and increased immune function, as some examples.

18.    Examples of these animal and human clinical studies include an animal study published on July 11, 2016, in the peer-reviewed scientific journal Nature Medicine (https://doi.org/10.1038/nm.4132) entitled "The lifespan and muscle benefits of urolithin A induces mitophagy and prolongs lifespan in C. elegans and increased muscle function in rodents"; a human clinical study published on June 14, 2019, in the peer-reviewed scientific journal Nature Metabolism (https://doi.org/10.1038/s/42255-019-0073-4) entitled "The mitophagy activator Urolithin A is safe and induces a molecular signature of improved mitochondrial and cellular health in humans"; a human clinical study published on January 20, 2022, in the peer-reviewed scientific journal JAMA Network (https://doi.org/10.1001/jamanetworkopen.2021.44279) entitled "Effect of urolithin A supplementation on muscle endurance and mitochondrial health in older adults, a randomized clinical trial"; and a human clinical study published on May 17, 2022, in the peer-reviewed scientific journal Cell Reports Medicine (https://doi.org/10.1016/j.xcrm.2022.100633) entitled "Urolithin A improves muscle strength, exercise performance, and biomarkers of mitochondrial health in a randomized trial in middle-aged adults." These and the results of other animal and human clinical studies conducted by Amazentis are clearly identified on Plaintiffs' TIMELINE® website: www.timeline.com/studies.

19.    Ultimately, having made significant investments to develop manufacturing methods for urolithin A at scale and to demonstrate the effectiveness

of urolithin A as a healthy aging supplement product, Amazentis is now bringing to consumers in the United States and around the world an array of products featuring urolithin A branded as MITOPURE®. Amazentis is further commercializing TIMELINE®, a consumer brand containing its proprietary MITOPURE® brand of urolithin A.

20.    To protect its extensive investments in researching, developing and commercializing urolithin A-containing products, Amazentis has invested in securing patent protection for its urolithin A products and production. Amazentis now owns dozens of patents and published patent applications in various jurisdictions throughout the world related to urolithin compounds, including patents directed to processes to synthesize and scale up the production of urolithin compounds, and supplementing one's diet with effective amounts of urolithin compounds to improve biological functions in healthy people as well as to treat certain diseases. The existence of these patents, as well as numerous published patent applications owned by Amazentis, is clearly posted on Plaintiffs' TIMELINE® website: https://www.timeline.com/patents, an address on the Internet accessible to the public without charge.

## The Patents-in-Suit

21.    Amazentis is the owner of all right, title, and interest in U.S. Patents Nos. 9,872,850 ("the '850 Patent"), 10,442,784 ("the '784 Patent"), 10,485,782 ("the '782 Patent"), 10,857,126 ("the '126 Patent"), 11,020,373 ("the '373 Patent"), and 12,310,943 ("the '943 Patent") (collectively, the "Patents-in-Suit"), with full rights to bring suit to enforce the Patents-in-Suit, including the right to sue for past, present and future infringement. True and correct copies of each of the Patents-in-Suit are attached to this complaint as Exhibits A to F.

22.    The '850 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark

Office on January 23, 2018, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Genoux as inventors, each of whom assigned their invention as disclosed in the '850 Patent to Amazentis.

23.    The '850 Patent is valid and enforceable.

24.    The '850 Patent claims, inter alia, "[a] method of [enhancing/maintaining] muscle performance, comprising: administering to a mammal in need thereof an effective amount of a urolithin, to increase muscle performance."

25.    The '784 Patent, entitled "Compositions Comprising an Urolithin Compound," was duly and legally issued by the United States Patent and Trademark Office on October 15, 2019, and names Penelope Andreux, Christopher Rinsch, and William Blanco-Bose as inventors, each of whom assigned their invention as disclosed in the '784 Patent to Amazentis.

26.    The '784 Patent is valid and enforceable.

27.    The '784 Patent claims, inter alia, "[a] composition comprising: a) a source of protein; and b) urolithin A."

28.    The '782 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on November 26, 2019, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Genoux as inventors, each of whom assigned their invention as disclosed in the '782 Patent to Amazentis.

29.    The '782 Patent is valid and enforceable.

30.    The '782 Patent claims, inter alia, "[a] method of increasing or maintaining mitochondrial function, comprising: administering to a subject in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function."

31.    The '126 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on December 8, 2020, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Genoux as inventors, each of whom assigned their invention as disclosed in the '126 Patent to Amazentis.

32.    The '126 Patent is valid and enforceable.

33.    The '126 Patent claims, inter alia, "[a] method of improving a cognitive function, comprising: administering to a subject in need thereof an effective amount of a urolithin thereby improving the cognitive function."

34.    The '373 Patent, entitled "Enhancing Autophagy Or Increasing Longevity By Administration Of Urolithins Or Precursors Thereof," was duly and legally issued by the United States Patent and Trademark Office on June 1, 2021, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Laurent Mouchiroud, Dongryeol Ryu, Penelope Andreux, and Johan Auwerx as inventors, each of whom assigned their invention as disclosed in the '373 Patent to Amazentis.

35.    The '373 Patent is valid and enforceable.

36.    The '373 Patent claims, inter alia, "[a] method of increasing autophagy, comprising the step of orally administering to a healthy human in need thereof an effective amount of urolithin A, or a pharmaceutically acceptable salt thereof, wherein the healthy human is not suffering from cancer or predisposed to

developing cancer, autophagy in healthy human is increased, and the effective amount is about 70 mg to about 1050 mg."

37.    The '943 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on May 27, 2025, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Geneux as inventors, each of whom assigned their invention as disclosed in the '943 Patent to Amazentis.

38.    The '943 Patent is valid and enforceable.

39.    The '943 Patent claims, inter alia, "[a] method of [enhancing muscle performance / increasing or maintaining mitochondrial function], comprising administering to a mammal in need thereof an effective amount of a urolithin, thereby [increasing muscle performance / increasing or maintaining mitochondrial function]; wherein the effective amount of the urolithin is 300-500 mg/day, 450-750 mg/day, or 600-1000 mg/day."

40.    Plaintiffs sell products that practice at least one claim of each of the Patents-in-Suit.

## **Neurogan's Infringing Activities**

41.    Neurogan offers for sale and sells at least six separate consumer products containing urolithin A through its own website, neuroganhealth.com, as well as through various ecommerce sites, including for example amazon.com, walmart.com, ebay.com, and others.

42.    Specifically, Neurogan sells and offers for sale at least five separate urolithin A supplement products, which include: (1) a dietary supplement encapsulated product purported to contain 700 mg of urolithin A per serving, (2) a dietary supplement encapsulated product purported to contain 1000 mg of

"Liposomal" urolithin A per serving, (3) a dietary supplement encapsulated product purported to contain 1000 mg of micronized urolithin A per serving, (4) a dietary supplement powder product purported to contain 800 mg of urolithin A per serving, and (5) a dietary supplement "gummy" product formulated purportedly to contain 1000 mg of Urolithin A per serving (collectively "Neurogan's Urolithin A supplement products"), to customers nationwide, including to residents in California and residents of this district.

43.    Neurogan also sells and offers for sale a urolithin A skin care product purported to contain a 1% concentration of urolithin A and Copper peptide GHK-CU as active ingredients ("Neurogan's Urolithin A skin care product") to customers nationwide, including to residents in California and residents of this district.

44.    A true and correct copy of printouts of webpages from neuroganhealth.com offering for sale (1) Neurogan's 700 mg urolithin A supplement product, (2) its 1000 mg "Liposomal" urolithin A supplement product, (3) its 1000 mg "Pro" micronized urolithin A supplement product, (4) its 800 mg powder urolithin A supplement product, (5) 1000 mg urolithin A dietary supplement "gummy" product, and (6) its 1% concentration urolithin A skin care product are attached to this complaint as Exhibits G, H, I, J, K and L. Images from Neurogan's neuroganhealth.com webpage for each of these products are included immediately below:

**(1) Neurogan's 700 mg Urolithin A Supplement Product:**





**(2) Neurogan's 1000 mg "Liposomal" Urolithin A Supplement Product:**




**(3) Neurogan's 1000 mg "Pro" Micronized Urolithin A Supplement Product:**




**(4) Neurogan's Urolithin A Powder Supplement Product:**




**(5) Neurogan's Urolithin A "Gummy" Supplement Product:**

 

**(6) Neurogan's Urolithin A / GHK-CU Peptide[1] Skin Care Product:**

 

45.    Neurogan's urolithin A product webpages also describe urolithin A as a "cellular health compound" that "supports cellular health," "supports cellular function," "supports active lifestyles," "long-term wellness," being "ideal for active individuals & athletes" and a supplement for "those seeking cellular support." Neurogan further advertises its urolithin A supplement products as offering "cellular support for an active energized lifestyle."

46.    Neurogan's urolithin A product webpages also include a customer review section that asks customers "What did you buy this supplement for?" with suggested answers that include "Energy boost," "Cognitive support," "Athletic performance," and "Longevity."

---

[1] "Copper peptide GHK-Cu is a naturally occurring copper complex of the tripeptide glycyl-L-histidyl-L-lysine. The tripeptide has strong affinity for copper(II) and was first isolated from human plasma. It can be found also in saliva and urine."  *See* https://en.wikipedia.org/wiki/Copper_peptide_GHK-Cu.

47.    Neurogan also prominently features product reviews from previous customers on its webpages as another means of advertising its urolithin A products. These customer reviews describe benefits of urolithin A as including "increased stamina," "reduce[d] mitochondrial spin," "increase in energy," "shortens recovery from [physical activity]," "my energy doubled," "vanished brain fog and afternoon fatigue," "promotes mitophagy…getting rid of defective, old mitochondria," "I was at 5 and now I'm up to 30 push-ups since taking urolithin A … I'm 73 and feel great," "no more afternoon slump," and "improved muscle strength and endurance," "added energy."

48.    Neurogan's website also includes multiple blog posts touting the benefits associated with Neurogan's urolithin A products. One blog post, dated December 20, 2023, states that urolithin A's benefits include its role in promoting "mitochondrial function," including the process called "mitophagy," and "improve[d] muscle strength and endurance."  This blog further states that "[w]hile pomegranates are an excellent natural source of [urolithin A] precursors, the actual conversion [of a precursor] to urolithin A can be inconsistent due to individual variations in gut microbiota."  As a result, it states, "Urolithin A supplements provide a more direct and consistent source of the compound." A true and correct copy of Neurogan's December 20, 2023 blog post is attached as Exhibit M to this complaint.

49.    Another Neurogan blog post, dated January 11, 2024, similarly identifies the benefits of urolithin A to include "cellular mitophagy," increased "muscle function and endurance," and maintenance of gut function. This web page further states that supplementation with Urolithin A "ensures a consistent and measurable intake, independent of individual differences in gut microbiota," and "provides a direct approach to harnessing the potential benefits of urolithin A." A true and correct copy of Neurogan's January 11, 2024 blog post is attached as Exhibit N to this complaint.

50.    In yet another blog post, dated March 6, 2024, Neurogan identifies and compares its urolithin A supplement products to other urolithin A supplement products, including Amazentis' Timeline® urolithin A supplement product.  In this blog entry, Neurogan describes Amazentis' MITOPURE® brand as the "pioneering brand in this space that has set a high standard for quality and scientific backing with clinical studies." Neurogan's blog goes on to say that while Amazentis' MITOPURE® brand of urolithin A supplement products is "seen as a premium option with a matching price, urolithin A supplementation has evolved." In the same blog post, Neurogan describes its own urolithin A supplements as "affordable [u]rolithin A" or offering "maximum potency." Also in this blog entry, Neurogan more generally touts urolithin A supplements as "[s]upport[ing] [c]ellular [h]ealth" because of "[u]rolithin A's role in promoting mitochondrial function, which is crucial for cellular energy and vitality."  The same blog further states that urolithin A "support[s] muscle health and physical performance, especially in the context of aging." A true and correct copy of Neurogan's March 6, 2024 blog post is attached as Exhibit O to this complaint.

51.    In yet another blog post, dated April 8, 2024, Neurogan further touts its urolithin A products as providing muscle support as one ages.  Describing its urolithin A supplement products, Neurogan states that urolithin A "has been found to support mitochondrial function by stimulating mitophagy – recycling damaged mitochondria and replacing them with new ones."  The blog further states that "[i]mproved mitochondrial function can lead to better energy production within muscle cells, potentially increasing muscle strength and endurance in older adults" and that [s]tudies also point to Urolithin A as having a role in promoting muscle protein synthesis for muscle growth and repair." A true and correct copy of Neurogan's April 8, 2024 blog post is attached as Exhibit P to this complaint.

52.    In yet another blog post, dated September 5, 2025, Neurogan touts urolithin A as contributing "to a healthier, more active lifestyle" for those in middle

age and "[m]aintaining muscle function and cellular health" for those in their seventies.  In the same blog post, Neurogan states that "We work[ed] closely with researchers at Aalborg University to create cellular health supplements that coincide with the latest scientific findings for safety and effectiveness."  Notably, the scientific findings / scientific literature that Neurogan cites as the basis of its blog post are the published results of two Amazentis clinical studies (copied below from the blog post).  A true and correct copy of Neurogan's September 5, 2024 blog post is attached as Exhibit Q to this complaint.

**Resources:**

1. Liu, S., D'Amico, D., Shankland, E., Bhayana, S., Garcia, J. M., Aebischer, P., ... & Marcinek, D. J. (2022). Effect of urolithin A supplementation on muscle endurance and mitochondrial health in older adults: a randomized clinical trial. *JAMA network open, 5*(1), e2144279-e2144279.

2. Singh, A., D'Amico, D., Andreux, P. A., Fouassier, A. M., Blanco-Bose, W., Evans, M., ... & Rinsch, C. (2022). Urolithin A improves muscle strength, exercise performance, and biomarkers of mitochondrial health in a randomized trial in middle-aged adults. *Cell Reports Medicine, 3*(5).

53.    Neurogan also offers for sale and sells its urolithin A products on Amazon's online marketplace. Like on its neuroganhealth.com website, on Amazon Neurogan touts its urolithin A supplement products as providing "Advanced Cellular Health."  On the Amazon pages for its urolithin A products,  Neurogan also includes a promotional video.  This video, titled "Neurogan Brand Story With Urolithin A Pro," provides video and narration promoting Neurogan's Urolithin A supplement products for healthy aging, to promote muscle health and recovery as one exercises, and to maintain muscle function as one ages (as seen below).





54.    This video prominently displays one of Neurogan's Urolithin A supplement products (as seen below) when the narrator states that "We blend science with nature to create products focused on cellular health that help you stay sharp, energized, and active as you age so you can continue enjoying what you love and celebrate your bodies capabilities. Live well. Age well. Nourish your mind and body with Neurogan Health."





Neurogan Brand Story With Urolithin A Pro
Neurogan

55.    A true and correct copy of printouts of webpages from Amazon.com offering for sale Neurogan's (1) 700 mg urolithin A supplement product, (2) 1000 mg "Liposomal" urolithin A supplement product, (3) 1000 mg "Pro" micronized urolithin A supplement product, and (4) 800 mg powder urolithin A supplement product are attached to this complaint as Exhibits R, S, T and U.  A true and correct copy of the stills from Neurogan's promotional video on Amazon and a transcript of the narration of that video is attached as Exhibit V to this complaint.

56.    In addition to selling its urolithin A products on its own website and on Amazon, Neurogan also offers its urolithin A products for sale through other sales channels, including through Walmart and through other websites on the internet.

**Infringement of the Patents-in-Suit**

57.    Independent claim 1 of the '850 Patent recites: "A method of enhancing muscle performance, comprising: administering to a mammal in need thereof an effective amount of a urolithin, to increase muscle performance."

58.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are intended to convey that taking Neurogan's urolithin A products enhances muscle performance.

59.    On information and belief, customers of Neurogan's supplement and skin care products infringe, literally or under the doctrine of equivalents, at least

independent claim 1 of the '850 Patent as well as one or more of the following additional claims that depend on claim 1: claim 2 ("wherein the muscle performance is selected from the group consisting of strength, speed, and endurance"), claim 4 ("wherein the urolithin is administered orally"), claim 5 ("wherein the urolithin is administered parenterally"), claim 7 ("wherein the urolithin is administered at least daily"), claim 8 ("wherein the urolithin is urolithin A"), claim 12 ("wherein the said enhancement is improved muscle function"), claim 13 ("wherein the said enhancement is increased muscle mass"), claim 17 ("wherein the mammal is a human"), claim 18, which also depends on claim 17 ("wherein the urolithin is administered orally"), claim 19, which also depends on claim 18 ("wherein the urolithin is urolithin A"), and claim 39 ("wherein the urolithin is administered in the form of a dietary supplement.")

60.    Independent claim 20 of the '850 Patent recites: "A method of maintaining muscle performance, comprising: administering to a mammal in need thereof an effective amount of a urolithin, to maintain muscle performance."

61.    On information and belief, customers of Neurogan's supplement and skin care products infringe, literally or under the doctrine of equivalents, at least independent claim 20 of the '850 Patent as well as one or more of the following additional claims that depend on claim 20: claim 21 ("wherein the muscle performance is selected from the group consisting of strength, speed, and endurance"), claim 22 ("wherein the urolithin is urolithin A"), claim 23 ("wherein the urolithin is administered orally"), claim 24 ("wherein the urolithin is administered parenterally"), claim 26 ("wherein the urolithin is administered at least daily"), claim 27 ("wherein the said method maintains muscle function"), claim 28 ("wherein the said method maintains muscle mass"), claim 31 ("wherein the mammal is a human"), claim 32, which also depends on claim 31 ("wherein the urolithin is administered orally"), claim 33, which also depends on claim 31 ("wherein the urolithin is urolithin A"), claim 34 ("wherein the mammal is human;

the urolithin is administered orally; and the urolithin is urolithin A"), and claim 45 ("wherein the urolithin is administered in the form of a dietary supplement").

62.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as supplement and skin care products, while having knowledge of or being willfully blind to the existence of the '850 Patent, Neurogan actively induces the infringement of at least claims 1, 2, 4, 5, 7, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 31, 32, 34, 39, and 45 of the '850 Patent.

63.    On information and belief, Neurogan's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement and skin care products, while having knowledge of or being willfully blind to the existence of the '850 Patent, actively induces the infringement of at least claims 1, 2, 4, 5, 7, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 31, 32, 34, 39, and 45 of the '850 Patent.

64.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as supplement and skin care products, while knowing that those products are especially adapted for use in an infringement of the '850 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Neurogan has contributed to the infringement of at least claims 1, 2, 4, 5, 7, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 31, 32, 34, 39, and 45 of the '850 Patent.

65.    Independent claim 1 of the '784 Patent recites: "A composition comprising: a) a source of protein; and b) urolithin A."

66.    On information and belief, Neurogan's urolithin A skin care product includes a source of protein and urolithin A at least because it includes the ingredient Copper peptide GHK-Cu in addition to urolithin A.

67.    Neurogan's urolithin A skin care product infringes at least independent claim 1 of the '784 Patent as well as one or more of the following additional claims that depend on claim 1: claim 10 ("wherein the composition is in the form of a solid, a semi-solid, a powder or a liquid").

68.    On information and belief, customers of Neurogan's skin care products infringe, literally or under the doctrine of equivalents, at least independent claim 1 and dependent claim 10 of the '784 Patent.

69.    On information and belief, by offering for sale and selling a composition that includes "a source of protein" and urolithin A while having knowledge of or being willfully blind to the existence of the '784 Patent, Neurogan actively induces the infringement of at least claims 1 and 10 of the '784 Patent.

70.    On information and belief, Neurogan's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling a composition that includes "a source of protein" and urolithin A while having knowledge of or being willfully blind to the existence of the '784 Patent, actively induces the infringement of at least claims 1 and 10 of the '784 Patent.

71.    On information and belief, by offering for sale and selling a composition that includes "a source of protein" and urolithin A (including in an effective amount for "treating a muscle-related pathological condition") while knowing that that product is especially adapted for use in an infringement of the '784 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Neurogan has contributed to the infringement of at least claims 1 and 10 of the '784 Patent.

72.    Independent claim 1 of the '782 Patent recites: "A method of increasing or maintaining mitochondrial function, comprising: administering to a subject in

need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function."

73.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are meant to convey that using Neurogan's urolithin A products increases or maintains mitochondrial function.

74.    On information and belief, customers of Neurogan's supplement and skin care products infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '782 Patent as well as one or more of the following additional claims that depend on claim 1: claim 3 ("wherein the urolithin is urolithin A"), claim 5 ("wherein the urolithin is administered orally"), claim 6 ("wherein the urolithin is administered topically"), claim 7 ("wherein the subject is a human"), claim 19 ("wherein the urolithin is administered parenterally") claim 21 ("wherein mitochondrial function is maintained"), claim 22 ("wherein mitochondrial function is increased"), claim 23 ("wherein mitochondrial activity is increased"), claim 25 ("wherein the energy of the subject is increased"), claim 26 ("wherein mitochondrial biogenesis is increased"), claim 28 ("wherein ATP levels are increased in tissue"), and claim 29, which also depends on claim 28 ("wherein the tissue is a muscle tissue").

75.    Independent claim 2 of the '782 Patent recites: "A method of treating, preventing, or managing a mitochondria-related disease or condition associated with altered mitochondrial function or a reduced mitochondrial density, comprising: administering to a subject in need thereof a therapeutically effective amount of a urolithin, thereby treating, preventing, or managing the disease or condition associated with altered mitochondrial function or reduced mitochondrial density."

76.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are meant to convey that taking Neurogan's Urolithin

A products will treat, prevent or manage a mitochondrial-related condition associated with altered mitochondrial function or a reduced mitochondrial density.

77.    On information and belief, customers of Neurogan's supplement and skin care products infringe, literally or under the doctrine of equivalents, at least independent claim 2 of the '782 Patent as well as one or more of the following additional claims that depend on claim 2: claim 10 ("wherein the mitochondria-related disease or condition is decrease of muscle performance or mental performance"), claim 11 ("wherein the mitochondria-related disease or condition is age-related decline in mitochondrial function"), claim 13 ("wherein the urolithin is urolithin A"), claim 15 ("wherein the urolithin is administered orally"), claim 16 ("wherein the urolithin is administered topically"), claim 17 ("wherein the subject is a human"), claim 20 ("wherein the urolithin is administered parenterally"), claim 24 ("wherein mitochondrial activity is increased"), claim 27 ("wherein mitochondrial biogenesis is increased"), claim 30 ("wherein ATP levels are increased in tissue") and claim 31, which also depends on claim 30 ("wherein the tissue is a muscle tissue").

78.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as supplement and skin care products, while having knowledge of or being willfully blind to the existence of the '782 Patent, Neurogan actively induces the infringement of at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of the '782 Patent.

79.    On information and belief, Neurogan's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement and skin care products, while having knowledge of or being willfully blind to the existence of the '782 Patent, Neurogan actively induces the infringement of at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of the '782 Patent.

80.    On information and belief, by offering for sale and selling "effective amount[s]" of Urolithin A as supplement and skin care products, while knowing that it is especially adapted for use in an infringement of the '782 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Neurogan has contributed to the infringement of at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of the '782 Patent.

81.    Independent claim 1 of the '126 Patent recites: "A method of improving a cognitive function, comprising: administering to a subject in need thereof an effective amount of a urolithin thereby improving the cognitive function."

82.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are meant to convey that taking Neurogan's urolithin A product improves cognitive function.

83.    On information and belief, customers of Neurogan's supplement products infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '126 Patent as well as the following additional claims that depend on claim 1: claim 5 ("wherein the urolithin is urolithin A"), claim 7 ("wherein the urolithin is administered orally"), claim 9 ("wherein the urolithin is administered at least daily"), claim 10 ("wherein the subject is a human"), claim 17 ("wherein the urolithin is administered in the form of a dietary supplement"), and claim 18 ("wherein the urolithin is administered in the form of a nutritional supplement").

84.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as supplement product, while having knowledge of or being willfully blind to the existence of the '126 Patent, Neurogan actively induces the infringement of at least claims 1, 5, 7, 9, 10, 17, and 18 of the '126 Patent.

85.    On information and belief, Neurogan's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement product, while having knowledge of or being willfully blind to the existence of the '126 Patent, Neurogan actively induces the infringement of at least claims 1, 5, 7, 9, 10, 17, and 18 of the '126 Patent.

86.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as a supplement product, while knowing that it is especially adapted for use in an infringement of the '126 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Neurogan has contributed to the infringement of at least claims 1, 5, 7, 9, 10, 17, and 18 of the '126 Patent.

87.    Independent claim 1 of the '373 Patent recites: "A method of increasing autophagy, comprising the step of orally administering to a healthy human in need thereof an effective amount of urolithin A, or a pharmaceutically acceptable salt thereof, wherein the healthy human is not suffering from cancer or predisposed to developing cancer, autophagy in the healthy human is increased, and the effective amount is about 70 mg to about 1050 mg."

88.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are meant to convey that taking Neurogan's urolithin A supplement product at the listed dosages increases autophagy in a healthy human.

89.    On information and belief, customers of Neurogan's supplement products infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '373 Patent as well as the following additional claims that depend on claim 1: claim 2 ("wherein the autophagy is mitophagy"), claim 5 ("wherein the effective amount is about 140 mg to about 630 mg"), claim 6 ("wherein the

effective amount is about 210 mg to about 520 mg"), claim 7 ("wherein the effective amount is about 140 mg to about 525 mg"), claim 8 ("wherein the effective amount is about 280 mg to about 490 mg"), claim 10 ("wherein the effective amount is about 500 mg"), and claim 18 ("wherein the urolithin A is administered in the form of a tablet or capsule.").

90.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, between "about 70 mg and about 1050 mg" as a supplement product, while having knowledge of or being willfully blind to the existence of the '373 Patent, Neurogan actively induces the infringement of at least 1, 2, 5, 6, 7, 8, 10, and 18 of the '373 Patent.

91.    On information and belief, Neurogan's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement product, while having knowledge of or being willfully blind to the existence of the '373 Patent, Neurogan actively induce the infringement of at least claims 1, 2, 5, 6, 7, 8, 10, and 18 of the '373 Patent.

92.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, between "about 70 mg and about 1050 mg" as a supplement product, while knowing that it is especially adapted for use in infringement of the '373 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Neurogan has contributed to the infringement of at least claims 1, 2, 5, 6, 7, 8, 10, and 18 of the '373 Patent.

93.    Independent claim 1 of the '943 Patent recites: "A method of enhancing muscle performance, comprising administering to a mammal in need thereof an effective amount of a urolithin, thereby increasing muscle performance; wherein the

effective amount of the urolithin is 300-500 mg/day, 450-750 mg/day, or 600-1000 mg/day."

94.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are meant to convey that taking Neurogan's urolithin A product at the listed dosages enhances muscle performance in a human.

95.    On information and belief, customers of Neurogan's supplement products infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '943 Patent as well as the following additional claims that depend on claim 1: claim 6 ("wherein the effective amount of the urolithin is 600-1000 mg/day"), claim 7, which also depends on claim 6 ("wherein the effective amount of the urolithin is 1000 mg/day"), claim 9 ("wherein the urolithin is urolithin A"), claim 10 ("wherein the urolithin is administered orally"), claim 11 ("wherein the mammal is a human"), claim 16 ("wherein the urolithin is administered in the form of a dietary supplement"), and claim 33 ("wherein the urolithin is urolithin A; the effective amount of the urolithin A is 1000 mg/day; the urolithin A is administered in the form of a dietary supplement; and the mammal is a human").

96.    Independent claim 2 of the '943 Patent recites "A method of increasing or maintaining mitochondrial function, comprising administering to a mammal in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function; wherein the effective amount of the urolithin is 300-500 mg/day, 450-750 mg/day, or 600-1000 mg/day."

97.    On information and belief, Neurogan's statements in the attached exhibits, as referenced above, are meant to convey that taking Neurogan's Urolithin A supplement products at the listed dosages increases or maintains mitochondrial function in a human.

98.    On information and belief, customers of Neurogan's supplement products infringe, literally or under the doctrine of equivalents, at least independent claim 2 of the '943 Patent as well as the following additional claims that depend on

claim 2: claim 20 ("wherein the urolithin is urolithin A"), claim 24 ("wherein the effective amount of the urolithin is 600-1000 mg/day"), claim 25, which also depends on claim 24 ("wherein the effective amount of the urolithin is 1000 mg/day"), claim 26 ("wherein the urolithin is administered orally"), claim 27 ("wherein the mammal is a human"), claim 30 ("wherein the urolithin is administered in the form of a dietary supplement"), claim 31, which depends on claim 27 ("wherein the urolithin is urolithin A") and claim 35 ("wherein the urolithin is urolithin A; the effective amount of the urolithin A is 1000 mg/day; the urolithin A is administered in the form of a dietary supplement; and the mammal is a human.").

99.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, including at the range "600-1000 mg" as a supplement product, while having knowledge of or being willfully blind to the existence of the '943 Patent, Neurogan actively induce the infringement of at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35 of the '943 Patent.

100.   On information and belief, Neurogan's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement products, while having knowledge of or being willfully blind to the existence of the '943 Patent, actively induce the infringement of at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35 of the '943 Patent.

101.   On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, including at the range "600-1000 mg," as a supplement product, while knowing that it is especially adapted for use in an infringement of the '943 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Neurogan has contributed to the

infringement of at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35 of the '943 Patent.

### **Neurogan's Knowledge and Willful Infringement of the Patents-in-Suit**

102.  Amazentis has caused the patent numbers of each of the Patents-in-Suit to appear on articles practicing the Patents-in-Suit and/or by directing the public to an Internet location (accessible to the public without charge) that associates the patented articles with the number(s) of the patent(s) in compliance with 35 U.S.C. §287.

103.  Moreover, Neurogan has known of the existence of at least the '850, '782, and '373 Patents and the inventions claimed in these patents, since at least August 30, 2023, and the '784, '126, and '943 Patents and the inventions claimed in these patents, since at least June 6, 2025. Since at least those times, Neurogan has known of the Patents-in-Suit's relevance to Neurogan's urolithin A products, that Amazentis asserted Neurogan was infringing those patents as to products identified in this complaint, and that Neurogan is infringing, inducing the infringement of, and contributing to the infringement of those patents.

104.  On August 30, 2023, Amazentis sent a letter by email to Neurogan's Chief Executive Officer, Jan Brandrup, identifying Neurogan's urolithin A product (at the time Neurogan was selling only its 700 mg per day product) as infringing Amazentis' '850, '782, and '373 Patents. Amazentis further explained with examples how Neurogan was infringing Amazentis '782 Patent under 35 U.S.C. § 271(b) and (c).

105.  In its August 30, 2023 letter, Amazentis also directed Neurogan to its website that was freely accessible on the internet that identified other U.S. patents assigned to Amazentis.

106.  Amazentis requested that Neurogan provide its response to its August 30, 2023 letter by September 8, 2023. Having received no response from Neurogan, on October 2, 2023, Amazentis sent a follow-up email reiterating its position and

requesting a response to its August 30, 2023 letter by October 6, 2023. Neurogan likewise failed to respond to this follow-up email.

107.  Accordingly, Neurogan was aware of the '850, '782, and '373 Patents and its infringement of those patents at least as early as August 30, 2023, the date it received Amazentis' letter, although it should have been aware it was infringing those patents earlier.

108.  Amazentis sent a follow-up letter to Neurogan on June 6, 2026, by FedEx and email, requesting that Neurogan cease its willful infringement of Amazentis' United States Patent rights, including the '850, '782, and '373 and further identifying U.S. Patent Nos. 10,442,784, 10,857,126, and 12,310,943 as also being infringed by Neurogan's offers for sale and sale of its urolithin A supplement and skin care products.

109.  Accordingly, Neurogan was aware of the '784, '126, and '943 Patents and its infringement of those patents at least as early as June 6, 2025, the date it received Amazentis' follow-up email, although it should have been aware it was infringing those patents earlier.

110.  Following Amazentis' June 6 correspondence, Neurogan made certain changes to how it advertises its urolithin A products but has refused to remove its infringing products from the market, despite Amazentis explaining how Neurogan was continuing to infringe its patent rights and requesting that Neurogan comply with its request to stop using Amazentis' intellectual property rights and stop selling infringing products.

111.  Accordingly, Neurogan has known that its commercial offers for sale and sale of its urolithin A products formulated in supplement and skin care products have infringed and will infringe one or more claims of the '850, '784, '782, '126, '373, and '943 Patents, directly or indirectly, since at least June 6, 2025. At least since June 6, 2025, Neurogan has acted, and will continue to act, with a specific intent to induce others to infringe the '850, '784, '782, '126, '373, and '943 Patents.

112.  On information and belief, Neurogan has long known about Amazentis, its clinical trials, its MITOPURE® brand of urolithin A supplement products, and the patent rights that are the subject of this complaint and recited above.  This is because Neurogan has previously used Amazentis' own clinical studies to advertise the benefits of Neurogan's urolithin A products. For example, as seen in Neurogan's urolithin A advertisement in the below screen capture, taken from Neurogan's prior Amazon page for its Urolithin A supplement products, Neurogan based its claim that "Urolithin A supplementation may support muscle endurance and mitochondrial health in older adults" on the results of Amazentis' own clinical trial, published in 2022, titled "Effect of urolithin A supplementation on muscle endurance and mitochondrial health in older adults" published in the Journal of the American Medical Association ("JAMA").



113.  This same study was also referred to in an earlier promotional video that was previously embedded on Neurogan's Amazon page for its 1000 mg per serving Urolithin A "Pro" supplement product as can be seen from the excerpt of that video copied below.



In this video, Neurogan states: "In a notable study, adults 65 to 90 took 1000 mg of urolithin A daily. This research, conducted at renowned medical centers in Seattle, revealed significant improvements in muscle endurance, highlighting urolithin A's potential for supporting muscular health and vitality."  A true and correct copy of screenshots captured from this video containing captions that correspond to the narration in the video is attached as Exhibit W to this complaint.

114.  Additionally, Neurogan's website provides further evidence that Neurogan has long been aware of Amazentis as well as Amazentis' clinical trials and urolithin A patent rights.  For example, in a blog article on Neurogan's website regarding the appropriate dosage of urolithin A one should take, Neurogan states that "[c]linical studies have explored a range typically between 250 mg and 1000 mg per day and found it safe and effective for most healthy adults" and cites two Amazentis clinical studies (the study published in JAMA seen above and another study published in Cell Reports Medicine).  *See* Exhibit P.  In the same blog post as well as in other blog posts, Neurogan further recognizes that "Much of the existing research on Urolithin A has been conducted using patented forms such as Mitopure®" demonstrating that Neurogan is not only aware of Amazentis and its clinical studies, but Neurogan is also aware of Amazentis' patent rights related to

urolithin A, including, on information and belief, those that are now the subject of this lawsuit. *See* Exhibits M to Q.

115. Ultimately, Neurogan's repeated citation and use of the results from Amazentis' own clinical studies, as described in the JAMA and Cell Reports Medicine publications, to tout its own urolithin A products and acknowledgement of the patent rights related to Amazentis' MITOPURE® brand demonstrate: (1) that Neurogan was aware of Amazentis, (2) that Neurogan was aware of Amazentis' clinical trials for urolithin A, (3) that Neurogan was aware of Amazentis' MITOPURE® brand of urolithin A supplement products, and (4) on information and belief, that Neurogan was aware of or should have been aware of Amazentis' patent rights covering the use of urolithin A as a supplement product, including the patents described in this complaint.

116. In addition, the filing of this Complaint provides further notice to Neurogan of the Patents-in-Suit under 35 U.S.C. § 287.

## CLAIMS FOR RELIEF
### COUNT I
### (Infringement of U.S. Patent 9,872,850)

117. Amazentis realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

118. Neurogan's customers have been, and are still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '850 Patent, including at least claims 1, 2, 4, 5, 7, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 31, 32, 34, 39, and 45, by using Neurogan's urolithin A products in the United States, without authority.

119. Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the labels of its urolithin A products), induced others, including its customers, to

infringe one or more claims of the '850 Patent, including at least claims 1, 2, 4, 5, 7, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 31, 32, 34, 39, and 45.

120.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A product), contributed to the infringement of one or more claims of the '850 Patent, including at least claims 1, 2, 4, 5, 7, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 31, 32, 34, 39, and 45.

121.  Neurogan does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

122.  Neurogan's infringement of the '850 Patent has been and continues to be willful.

123.  Amazentis has and will continue to suffer damages because of Neurogan's infringement of the '850 Patent.

124.  Amazentis has and will continue to be irreparably harmed by Neurogan's infringement of the '850 Patent until and unless Neurogan's infringing acts are enjoined or otherwise cease.

### COUNT II
### (Infringement of U.S. Patent 10,442,784)

125.  Amazentis realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

126.  Neurogan has been, and is still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '784 Patent, including at least claims 1 and 10 by its unauthorized commercial manufacture, use, offer for sale, sale, and/or importation of a composition that includes "a source of protein" and urolithin A.

127.  Neurogan's customers have been, and are still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '784

Patent, including at least claims 1 and 10 by using Neurogan's skin care products in the United States, without authority.

128. Neurogan has, through its actions (including but not limited to the sale and promotion of its Urolithin A skin care products and/or through the instructions on the labels of its Urolithin A skin care products), induced others, including its customers, to infringe one or more claims of the '784 Patent, including at least claims 1 and 10.

129. Neurogan has, through its actions (including but not limited to the sale and promotion of its Urolithin A skin care products and/or through the instructions on the label of its Urolithin A skin care product), contributed to the infringement of one or more claims of the '784 Patent, including at least claims 1 and 10.

130. Neurogan does not provide, promote, advertise, or otherwise distribute Urolithin A for any substantial non-infringing uses.

131. Neurogan's infringement of the '784 Patent has been and continues to be willful.

132. Amazentis has and will continue to suffer damages because of Neurogan's infringement of the '784 Patent.

133. Amazentis has and will continue to be irreparably harmed by Neurogan's infringement of the '784 Patent until and unless Neurogan's infringing acts are enjoined or otherwise cease.

## COUNT III
### (Infringement of U.S. Patent 10,485,782)

134. Amazentis realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

135. Neurogan's customers have been, and are still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '782 Patent, including at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24,

25, 26, 27, 28, 29, 30, and 31, by using Neurogan's urolithin A products in the United States, without authority.

136.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A care products), induced others, including its customers, to infringe one or more claims of the '782 Patent, including at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.

137.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products), contributed to the infringement of one or more claims of the '782 Patent, including at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.

138.  Neurogan does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

139.  Neurogan's infringement of the '782 Patent has been and continues to be willful.

140.  Amazentis has and will continue to suffer damages because of Neurogan's infringement of the '782 Patent.

141.  Amazentis has and will continue to be irreparably harmed by Neurogan's infringement of the '782 Patent until and unless Neurogan's infringing acts are enjoined or otherwise cease.

## COUNT IV
### (Infringement of U.S. Patent 10,857,126)

142.  Amazentis realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

143.  Neurogan's customers have been, and are still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '126

Patent, including at least claims 1, 5, 7, 9-10, and 17-18, by using Neurogan's urolithin A products in the United States, without authority.

144. Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products), induced others, including its customers to infringe one or more claims of the '126 Patent, including at least claims 1, 5, 7, 9-10, and 17-18.

145. Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products), contributed to the infringement of one or more claims of the '126 Patent, including at least claims 1, 5, 7, 9-10, and 17-18.

146. Neurogan does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

147. Neurogan's infringement of the '126 Patent has been and continues to be willful.

148. Amazentis has and will continue to suffer damages because of Neurogan's infringement of the '126 Patent.

149. Amazentis has and will continue to be irreparably harmed by Neurogan's infringement of the '126 Patent until and unless Neurogan's infringing acts are enjoined or otherwise cease.

## COUNT V
### (Infringement of U.S. Patent 11,020,373)

150. Amazentis realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

151. Neurogan's customers have been, and are still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '373 Patent, including at least claims 1-2, 5-8, 10, and 18, by using Neurogan's urolithin A products in the United States, without authority.

152.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products), induced others including its customers to infringe one or more claims of the '373 Patent, including at least claims 1-2, 5-8, 10, and 18.

153.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its Urolithin A products), contributed to the infringement of one or more claims of the '373 Patent, including at least claims 1-2, 5-8, 10, and 18.

154.  Neurogan does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

155.  Neurogan's infringement of the '373 Patent has been and continues to be willful.

156.  Amazentis has and will continue to suffer damages because of Neurogan's infringement of the '373 Patent.

157.  Amazentis has and will continue to be irreparably harmed by Neurogan's infringement of the '373 Patent until and unless Neurogan's infringing acts are enjoined or otherwise cease.

**COUNT VI**
**(Infringement of U.S. Patent 12,310,943)**

158.  Amazentis realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

159.  Neurogan's customers have been, and are still, directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '943 Patent, including at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35, by using Neurogan's urolithin A products in the United States, without authority.

160.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the

label of its urolithin A products), induced others including its customers to infringe one or more claims of the '943 Patent, including at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35.

161.  Neurogan has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products), contributed to the infringement of one or more claims of the '943 Patent, including at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35.

162.  Neurogan does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

163.  Neurogan's infringement of the '943 Patent has been and continues to be willful.

164.  Amazentis has and will continue to suffer damages because of Neurogan's infringement of the '943 Patent.

165.  Amazentis has and will continue to be irreparably harmed by Neurogan's infringement of the '943 Patent until and unless Neurogan's infringing acts are enjoined or otherwise cease.

## **PRAYER FOR RELIEF**

WHEREFORE, Amazentis respectfully requests the following relief:

A.    A judgment that Neurogan has infringed, either directly or indirectly, the '850, '784, '782, '112, '373, and '943 Patents;

B.    An order preliminarily and/or permanently enjoining Neurogan, together with its directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, other related business entities, and all persons in active concert or privity with them and their successors and assigns, from directly or indirectly infringing the '850, '784, '782, '112, '373 and '943  Patents;

C.    A judgment that awards Amazentis damages adequate to compensate for Neurogan's infringing acts in accordance with 35 U.S.C. § 284;

D.    In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '850, '784, '782, '112, '373, and '943 Patents;

E.    A judgment declaring that Neurogan's infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

F.    Finding that this case is an exception under 35 U.S.C. § 285, and awarding Amazentis its reasonable attorneys' fees incurred in connection with this action;

G.    Awarding Amazentis its costs and expenses in this action, including expert and witness fees;

H.    An award of prejudgment and post-judgment interest;

I.    Awarding Amazentis such other and future relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Amazentis respectfully demands a trial by jury on all issues triable by jury.

Dated:  September 24, 2025

By: s/ Jesse Hindman _____

Jesse Hindman, Cal. Bar No. 222935
EDLESON & HINDMAN
225 Broadway, Suite 2220
San Diego, CA 92101
Telephone: (619) 255-4078
Email:  jesse@erhlawfirm.com

Jeffrey I.D. Lewis
**FOLEY HOAG LLP**
1301 Avenue of the Americas, 25th Floor
New York, NY 10019
Phone: 212.812.0400
Fax: 212.812.0399

Nathanial J. McPherson
**FOLEY HOAG LLP**
Seaport West, 155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax 617.832.7000

*Of Counsel:*

Dana M. Gordon,
**FOLEY HOAG LLP**
Seaport West, 155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000

*Attorneys for Plaintifsf*
*AMAZENTIS SA and TIMELINE*
*LONGEVITY INC.*